Argued December 19, 1916, reversed January 23, rehearing denied February 13, 1917.

## McCLAINE v. SILVERTON.*

(162 Pac. 496.)

**Municipal Corporations—Street Improvement—Quieting Title—Sufficiency of Answer.**

1. Under a city charter, empowering the council to provide for the paving of streets to be assessed to the adjoining property, and to be undertaken after published notice, and that until five days after expiration of such notice, the owner or owners of two thirds

---

*On the right of abutting owner to resist payment of assessment for walk or pavement constructed by municipality because of the poor quality, see notes in 56 L. R. A. 905; 27 L. R. A. (N. S.) 1086.
REPORTER.

of the property might file a written remonstrance against the proposed improvement, the city's answer in an owner's suit to quiet title to property against which the city had attempted to establish a lien was not fatally defective because it did not allege that no sufficient remonstrance had been filed within the time fixed by the charter, where it was admitted that the city took every step required by the charter, as in such case its jurisdiction could have been ousted only by some move of the property owners, which would have been a matter of defense in the proceeding.

Municipal Corporations—Paving Improvement—Acceptance—Conclusiveness.

2. In a suit to quiet title to property against which defendant city sought to establish a lien for a paving improvement, plaintiff could not contend that the paving in front of his property was not well done, as the council's acceptance of the work done under the supervision of the city engineer, who had previously approved it, in the absence of anything to show fraud, was conclusive.

[As to judicial inquiry into motives prompting enactment of ordinance relating to local improvement, see note in Ann. Cas. 1912A, 718.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.     Statement by MR. JUSTICE BENSON.

This is a suit by A. F. McClaine, Minnie McClaine Keene, Fielda E. McClaine, S. Eleanor McClaine and Anfield Cavanaugh against the City of Silverton, a municipal corporation, to quiet title to certain real property in the City of Silverton.     The complaint is in the usual form.

Defendant answered by reciting the several steps taken by the council for paving McClaine Street in the city and making the cost thereof a charge upon the abutting property, providing for assessments against such property, and establishing a lien thereon for such cost.

After some denials, the reply seeks to avoid the assessments, upon the ground that the contractor did not make the improvement in accordance with the plans and specifications and, in support thereof, assigns four specific breaches of the contract as follows: (1) That the contract and specifications required the subgrade to be rolled with a 10-ton roller until such roller could

make no impression upon the subgrade; (2) that the component parts of the concrete should be mixed by measurement and not by estimate; (3) that no cement should be used in the construction of the pavement, which had not been "on the work" at least 10 days, and of which samples had been submitted to and approved by the defendant; and (4) that immediately after the concrete was laid in place on the street, it should be tamped with iron-shod rammers until the water flushed to the surface and all voids were filled. It is alleged that none of these requirements were in any manner complied with, and that as a result the pavement is worthless, and will soon have to be replaced; and that the defendant knew of these derelictions of the contractor, but totally disregarded them, and accepted the work as having been done in accordance with the terms of the contract. Then follow allegations of defendant's effort to charge plaintiffs' property with the cost of the improvement and to establish a lien thereon. A trial was had resulting in a decree for plaintiffs, from which defendant appeals.

Reversed. Suit Dismissed.
Rehearing Denied.

For appellant there was a brief with oral arguments by *Mr. John H. McNary* and *Mr. George G. Bingham.*

For respondents there was a brief over the names of *Mr. Custer E. Ross, Mr. Omar C. Spencer* and *Messrs. Carson & Brown,* with oral arguments by *Mr. Ross* and *Mr. Spencer.*

Mr. Justice Benson delivered the opinion of the court.

1. We shall first consider plaintiff's contention that the answer is fatally defective by reason of the failure

to allege therein that no sufficient remonstrance had been filed within the time fixed by the city charter. Section 71 of such charter, enumerating the powers of the city council, reads thus:

"To provide for the opening of streets and to establish the grades of same; to provide for and to regulate the planking, paving or otherwise improving the streets; building of sewers and the laying of gas-pipes and water-mains. All such improvements shall be assessed to the property next adjoining it *pro rata* as per estimate of surveyor and all such improvements shall be undertaken after ten days' notice by publication in some newspaper of the City of Silverton and said notice shall appear in not less than two issues of said newspaper. The notice must specify the work to be done and in what manner and until five days after the expiration of said notice the owner or owners of two thirds of the property next adjacent thereto may make and file with the council a written remonstrance against the proposed improvements and thereupon the same shall not be proceeded with. If no remonstrance be made and filed with the council, the council shall within a reasonable time, and not more than three months after final publication of notice proceed as hereinafter provided."

In support of this position our attention is called to the case of *Pittsburg* v. *Walter,* 69 Pa. 365, a case in which the street improvement was undertaken under a statute which *inter alia* provides that such grading, etc., should not be done "unless upon the written application of a majority in interest of the owners whose property is situated or abuts thereon." There is a striking difference between such a provision and that of the charter of Silverton. In the Pittsburg Case the initiative rested with the property owners, and the city had no jurisdiction to take a single step toward the improvement until after the filing of the application of the interested owners of property; but Sec-

tion 71 of the Silverton charter authorizes the council to begin the work of paving by taking certain prescribed steps which, in the first instance, vests them with jurisdiction of which they may be subsequently divested by the action of those who own the abutting property. In the present case it is practically admitted that the city took every step that is required of it by the charter. If anything further occurred which might constitute an ouster of jurisdiction, it might have been a move by the property owners, and, in this proceeding, would be a matter of defense. The case of *Ogden City* v. *Armstrong,* 168 U. S. 224 (42 L. Ed. 444, 18 Sup. Ct. Rep. 98), is also urged upon our attention because of the language used by Mr. Justice Shiras, in which he says:

"The fact of consent by the requisite number, in this case to be manifested by failure to object, is jurisdictional, and in the nature of a condition precedent to the exercise of the power."

It is to be noted that the statute upon which that statement was based expressly withholds jurisdiction until the time for filing objections has lapsed without such filing having been made. The case of *Zeigler* v. *Hopkins,* 117 U. S. 683, (29 L. Ed. 1019, 6 Sup. Ct. Rep. 919), which is cited with approval in *Ogden City* v. *Armstrong,* 168 U. S. 224, (42 L. Ed. 444, 18 Sup. Ct. Rep. 98), is based upon a statute which provides that the adjacent property owners shall take the initiative by petition before the improvement shall be undertaken, and is therefore not inconsistent with the view we have expressed. It is also noteworthy that the opinion by Mr. Chief Justice Waite uses the following language:

"There is in reality but a single question presented for our consideration in this case, and that is whether,

in an action of ejectment brought to recover the possession of lands sold for the nonpayment of taxes levied to defray the expenses of opening Montgomery Avenue generally, * * the land owner is estopped from showing, by way of defense, that the petition for the opening presented to the mayor was not signed by the owners of the requisite amount of frontage."

The conclusion therein reached is that the land owner is not estopped to attack the city's decision upon the computation of such frontage. We therefore conclude that the answer of the defendant is not defective in the particular referred to.

2. We next consider the plaintiffs' contention that the paving in front of their property was not well done, and is an inferior piece of work. The relation of the courts to a complaint of this character is quite clearly expressed in Section 586, Elliott, Roads and Streets (2 ed.), from which we quote:

"According to the great weight of authority, the rule, in the absence of a statute granting a right to contest the question whether the work has been done in conformity to the terms of the contract, is that the acceptance by the highway authorities is conclusive upon the property owners."

This author does not cheerfully yield to the logic of the weight of authority, but concludes as follows:

"It may be expedient and just to adjudge acceptance conclusive where there is nothing more than a dispute as to whether the work has been reasonably well done, but it can be neither expedient nor just to hold the acceptance conclusive in cases where it appears that the work is of an entirely different kind from that required by the contract or is totally worthless."

This latter view is the one which has been adopted by this court in the case of *Chance* v. *Portland,* 26 Or. 286 (38 Pac. 68), which has been cited in a long line

of decisions since then.    In the opinion in the case just
cited Mr. Justice Wolverton says:

"There was a substantial compliance with the ordi-
nance, so that it cannot be alleged that fraud is even
implied by reason of there being a wide difference be-
tween the work required by the ordinance and the work
actually done.    There is here no violation of the trust
relations which exist between the officers of the muni-
cipality and the abutting property holders whose prop-
erty is charged with the assessment.    Neither fraud
nor collusion is exhibited by the complaint on the part
of the officers, and their authority throughout the whole
proceedings, as shown by the testimony, appears to
have been exercised within the limitation of their pow-
ers under the charter, and they have acted at all times
in the utmost good faith.    The acceptance of the im-
provement by the common council under these condi-
tions is conclusive upon the defendants.    It could not
be promotive of good results to hold otherwise, as it
would make the courts revisory bodies for every city
government within the state, and open wide the doors
for contests of this nature upon collateral proceedings
like the present.    By so doing the courts would usurp
a large portion of the administrative powers of munici-
pal governments.    They have no such authority, and
cannot interfere with the discretionary powers of such
governments.    These matters of discretion and author-
ity must remain with the officers intrusted therewith
under the law without molestation or interference by
the courts."

All that is said of the showing in the above quotation
is equally true here.    A concrete pavement was called
for, and a concrete pavement was laid.    The work was
done under the direct supervision of the city engineer,
who approved it and so advised the council.    Upon
such approval the council accepted the work and paid
the contractor.    There is much conflict in the evidence
as to whether or not it is now a reasonably good pave-
ment.    In any event, there is no such wide divergence

between the terms of the contract and the work as done as to raise the inference of fraud and to justify the court in reviewing the conclusion of the municipal authorities that there was a substantial compliance with the contract. We are the more confirmed in this conclusion by the fact that no complaint was made in the matter until after the acceptance of and payment for the work, and that this is a collateral attack. The decree of the trial court will be reversed and one entered here dismissing the suit.

REVERSED. SUIT DISMISSED.<br>REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BEAN concur.